## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL ROBERT DUNN, | ) |
| | ) |
| Petitioner, | ) |
| | ) **CASE NO.  5:12-CV-8051-SLB** |
| vs. | ) **CRIM. CASE NO. 5:11-CR-0102-SLB-JEO** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on Dunn's Petition Under 28 U.S.C.
§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Motion
to Vacate].  (Doc. 1; Crim. Doc. 21.)[1]  Petitioner, Michael Robert Dunn, has filed the Motion
to Vacate, pursuant to 28 U.S.C. § 2255, asking the court for relief from his 97-month
sentence that the court imposed after he entered a guilty plea.  (Doc. 1; *see* Crim. Doc. 12.)
For the reasons stated below, Dunn's Motion to Vacate is due to be denied.

## I.  PROCEDURAL HISTORY

On March 30, 2011, a federal grand jury returned a three-count Indictment against
Dunn.  (Crim. Doc. 1.)  The Indictment charged Dunn with the following counts:  Count One
– receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2); Count Two –

---

[1]Citations to documents in the court's record in petitioner's Motion to Vacate appear
as "(Doc. __)."  Citations to documents in the court's record in the criminal proceedings
against petitioner, Case No. 5:11-CR-00102-SLB-JEO, appear as "(Crim. Doc. __)."  Page
number citations refer to the page numbers assigned to the document by the court's CM/ECF
electronic filing system.

possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); and Count

Three – distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  (*See*

*generally id*.)

Dunn entered into a Plea Agreement with the Government on May 24, 2011, in which

he agreed to plead guilty to Count Two of the Indictment, possession of child pornography.

(Crim. Doc. 12 at 1, 12-13.)  In return, the Government agreed to dismiss Counts One and

Three and to recommend a custodial sentence at the low end of the Guidelines range.  (*Id.*

at 1.)  The Factual Basis for the Plea, set forth in the Agreement, contained the following

facts that the Government was "prepared to prove . . . at the trial of this case:"

> On February 6th, 2009, a federal search warrant was executed at 4401
> Spartacus Drive SW, Apt 1, Huntsville, Madison County, Alabama, 35805.
> Two computers and a compact disc were located and found to belong to
> Michael Robert Dunn.  After waiving his rights pursuant to *Miranda*, Dunn
> admitted to possessing images of child pornography.
>
> A forensic examination was performed on Dunn's computers and the
> compact disc.  Child pornography was found on one of the computers and the
> compact disc.  Thirteen videos[2] and 26 images of child pornography were
> found on the computer.  Of these, 15 images and five videos are identified and
> are of real children engaged in sexually explicit conduct.  They are from other
> states and other countries, thus they have traveled in interstate and foreign
> commerce.  The compact disc contains eight images of child pornography.
> The disc was manufactured by Memorex, a brand owned by Imation.  Imation

---

[2]Under the Sentencing Guidelines, each video is considered 75 images for purposes
of calculating the sentencing range.  *United States v. Hensley*, 322 Fed. Appx. 776, 777 n.2
(11th Cir. 2009).  Therefore, these 13 videos were considered to be the equivalent of 975
images, which added 5 levels to Dunn's base offense level of 18.  U.S.S.G. § 2G2.2(a)(1),
(b)(7)(D).

and Memorex brand optical discs sold in the United States are manufactured in Asia.

The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.

(*Id*. at 2-3 [footnote added].) The Plea Agreement also contains a waiver provision, in which Mr. Dunn "waive[d] and [gave] up [his] right to appeal [his] conviction and/or sentence," and "waive[d] and [gave] up the right to challenge [his] conviction and/or sentence . . . in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255,"[3] except in two limited circumstances not at issue in this case.[4] (*Id*. at 5-6.)

On June 2, 2011, the court held a Change of Plea Hearing. (Crim. Doc. 22 at 1.) At the hearing, Dunn entered a guilty plea to Count Two of the Indictment. (*Id*. at 3.) During the plea colloquy, the court reviewed with Dunn the Indictment and the Plea Agreement, asking:

THE COURT: . . . So, Mr. Dunn, first, with regard to what the Assistant U.S. Attorney stated with regard to the plea agreement; that is, if you plead guilty to Count Two, they will recommend a sentence at the low end of the Guideline range, as well as dismiss Counts One and Three, and then added to that what your attorney said, that you are forever giving up any right to

---

[3]The Government has not asserted Dunn's post-conviction waiver as a ground for denying his Motion to Vacate. (*See generally* doc. 4.)

[4]Pursuant to the appeal waiver, Dunn could appeal and/or seek post-conviction relief of his conviction and sentence if the sentence imposed exceeded the statutory maximum, ten years, or exceeded the Guideline range as determined by the court, also ten years. (Crim. Doc. 12 at 5-6.)

challenge the validity of the search warrant, do you understand those to be the pertinent terms of the plea agreement in your case?

> THE DEFENDANT:  Yes, ma'am.

> THE COURT:  Do you have any different understanding of the plea agreement?

> THE DEFENDANT:  No, ma'am.

(*Id*. at 6-7.)  Dunn testified, under oath, that he understood the charge against him to which he was pleading guilty and that he understood the rights he was giving up by pleading guilty; he also testified that he understood that the Plea Agreement included a waiver of his right to appeal and his right to challenge his conviction and sentence collaterally except in limited circumstances.  (*Id*. at 8-11, 15-16.)  The court asked Dunn if the facts set forth in the Plea Agreement, which were also stated in open court by the Assistant United States Attorney, were "substantially correct;" he testified that they were.  (*Id*. at 17.)  Based on the proceedings, the court found Dunn's "plea of guilty [was] freely and voluntarily entered and the requisite factual basis for [his] plea exist[ed]," and it accepted his guilty plea.  (*Id.* at 18.)

On October 18, 2011, the court held a sentencing hearing.  (*See generally* Crim. Doc. 23.)  Counsel for Dunn stated in open court that he had reviewed the Presentence Report [PSR] with Dunn and that he had no objections.  (*Id*. at 3.)  Therefore, the court adopted the factual statements in the PSR and found, in accordance with the PSR, that "the Guidelines

Offense Level is 30.[5]   The Criminal History Category is I.   The Advisory Guideline

Imprisonment Range is from 97 months to 120 months.[6]   The supervised release period is

from any term of years not less than five years and up to life, and the fine range is from

15,000 to $150,000.   Restitution is not an issue in this case."   (*Id*. at 4 [footnote added].)

Before imposing sentence, the court allowed Mr. Dunn to address the court, during which

the following occurred:

> THE DEFENDANT:  . . .  Again, I want to apologize for this whole situation.  Years back when I first moved to Huntsville, I actually had three or four roommates that I lived with at the time.  And during that time, I found those images, and I was actually trying to find out who was putting those things on there.  And because of ignorance, I –
>
> . . .
>
> THE DEFENDANT:  Because of my ignorance, I did not get rid of the computer nor turn it into the authorities, because I was more afraid of what they would do.  So the only thing I did was try to find out who could have done it and then apparently, that's when the U.S. Marshals stepped in.  They found them on my computer.  So I do take responsibility for them on the computer because it was mine.

---

[5]The base level was 18.  USSG § 2G2.2(a)(1).  Two levels were added because the material contained an image of a prepubescent minor and another four levels were added because the "material . . . portrays sadistic or masochistic conduct."  *Id*. (b)(2), (b)(4).  Two levels were added because Dunn used a computer and two levels were added because he used a file sharing program that allowed others to access these files.  *Id*. (b)(3)(F), (b)(6).  The material consisted of over 600 images; therefore, the offense level was increased by five.  *Id*. (b)(7)(D).  Thus his adjusted offense level was 33, 18+2+4+2+2+5= 33.  Dunn received a three level reduction for acceptance of responsibility.  USSG § 3E1.1(a)-(b).

[6]Pursuant to the Sentencing Table an offense level of 30, together with a criminal history of I, results in a guideline range of 97-121 months.  USSG CH. 5, Pt. A.  However, because the statutory maximum was 10 years, 120 months, the upper end of the guideline range was reduced to 120 months.  *See* USSG § 5G1.1(c)(1).

As Mr. Tuten said, after the investigation started, I mean, I did, I got married just over a year ago or – actually, let me go back.  I got married just this past year, and my son was born a few months ago, and I was just trying to take care of my family.

I mean, I can't change what happened three or four years ago.  The only thing I can do is look to the future.  And I know I'm going to have take some kind of a sentence.  Maybe the court can just give me what it sees fit.

THE COURT:  Now, Mr. Dunn, you're not saying, are you, today that you just happened to find those on your computer and just sat there with them and then you were caught because they were on your computer because just the way you were actually caught is that you, according to the presentence report – and I would have to look.  I don't have a copy of your plea agreement with me.  Do you have a copy?  Can I have the plea agreement?

[DEFENDANT'S COUNSEL] MR. TUTEN:  Yes.

THE COURT:  That you were trying to share this information and – that's not in the plea agreement?  I'm just saying down here, I'm talking about here, "Based on the IP address, agents, during an authorized internet undercover operation, identified a computer in the State of Alabama that was offering to participate in the distribution of child pornography."

THE DEFENDANT:  It was utilized through LimeWire.  The U.S. Marshals that came to the apartment, they asked me if I knew what the LimeWire program was, and I told them that I knew what LimeWire was.  And they told me that's how they received the images was the transfer from the LimeWire program, because it had an open share – there's an open share setting on that LimeWire.  So any time that my computer was up and running and that LimeWire program was running, anybody could access that computer and grab the pictures.

THE COURT:  I guess I'm confused because I don't understand all this.  First of all, were these images you had on your own computer?  Are you saying that somebody came, a roommate, unbeknownst to you put these images on there, and you were trying to figure out what needed to be done?

6

THE DEFENDANT:  That's what I'm trying to say, Your Honor. Because it was my computer and it was in my apartment, I'm taking responsibility.

THE COURT:  So you're telling me that you're willing to face a jail sentence of over eight years in custody even though it wasn't really your child pornography?

THE DEFENDANT:  My attorney and I talked on several occasions, and I explained to him that situation.  And he told me my best – the advice that he gave me was to, you know, plea on possession, because the DA –

THE COURT:  Let me hear from the government to explain about this sharing and all that that's in Paragraph 8.  Can you explain that to me, Ms. Burrell?

[AUSA] MS. BURRELL:  Your Honor, he did have the file sharing program on his computer and, at the time, admitted that he had the file sharing computer, the LimeWire, and that he did use it to download music.  He said that he knew all of that child porn was on there, that his fiancé did not know that he had it on there.

He did tell the agents at that time that somebody that had been his roommate, a 19 year old, had downloaded it, but that he had kept it on there, that he knew it was on there, and that he had kept it from his fiancé.

I don't buy his standing up here now telling you that he did not know how the LimeWire program worked because he admitted that he used it to download and trade music.

THE DEFENDANT:  But I did not know that the file, the way the computer was set up, even what the U.S. Marshal said, there's a setting on the LimeWire program, that you could either have it where people could share it, or you could have it just for your use only and nobody could take from the computer, and I did not know that.

MS. BURRELL:  Your Honor, that's – I talked to his lawyer on numerous occasions about this and other issues.  And if you'll notice, we agreed to let him plead guilty just to the possession because he doesn't dispute

that it was on there, and he knew it was on there and didn't do anything to get rid of it.

He's not charged with receiving it or distributing or anything else related to the file sharing, but he knew that it was on there regardless of who put it on there. And I'm not so sure I buy that a roommate put it on there. But let's assume it is true, that he's telling the truth, he still knew it was on there and never did anything about it and looked at it and kept it from his fiancé.

THE COURT: Anything else you would like to say, Mr. Dunn?

THE DEFENDANT: No, Your Honor.

(*Id.* at 7-11.) After hearing from Dunn, the court found that the low-end Guidelines sentence was a just sentence, and it sentenced Dunn to a custodial sentence of 97 months. (*Id.* at 13; *see also* Crim. Doc. 19.)

Dunn filed this Motion to Vacate on November 13, 2012, in which he raises three grounds for relief:

A. Ground one: Conviction obtained by plea of guilty which was unlawfully or made [involuntary] or with the understanding of the nature of the charge or the consequences of the plea.

. . . Had the understanding that the guidelines of this charge [were] from range of zero to ten years. I was told good chance of probation. That I may not have to register depending on what the District Attorney would offer.

B. Ground two: Denial of effective assistance of counsel

. . . Was told I would get low end of the guidelines, I understood as that being zero to ten years not a guideline set by a investigator. Also, my attorney, Robert Tuten, did not want to appeal the search warrant on the grounds of several clerical errors including the address. He did not want to research about who all resided at residence at time of investigation.

C. Ground Three: Denial of Right to Appeal

8

> . . . Was told by Judge Sharon Blackburn that I had 14 days to appeal the length of the sentence.  As soon as sentencing hearing was over, I talked to Robert Tuten about appeal.  I did not hear from him again until after the 14 day period was up.  Never was told how and what to do about filing a appeal.

(Doc. 1 at 4.)  The Government filed a Response to Dunn's Motion to Vacate, together with an affidavit from Dunn's counsel, Robert Tuten.  (Docs. 4, 4-1.)  The court then notified Dunn of "his right to file affidavits or other materials to show why the motion should not be summarily denied or dismissed on the basis of the response by the Government."  (Doc. 6 at 1.)  The Order gave Dunn thirty days "to supply any additional evidentiary materials or legal arguments he may wish to offer with regard to whether the motion is subject to summary disposition."  (*Id.*)  Dunn asked the court for additional time to respond and this Motion was granted.  (Docs. 9, 10.)  Nevertheless, Dunn has not filed anything in response to the Government's submission or otherwise shown why his Motion to Vacate should not be summarily denied.

## II.  DISCUSSION

### A.  SECTION 2255 STANDARD

This court has held that the habeas petitioner "has the burden of showing he is entitled to relief from his sentence pursuant to 28 U.S.C. § 2255.  Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *Bryant v. United States*, No. 5:07-CR-0205-SLB-PWG, 2014 WL 519619, at *7 (N.D. Ala. Feb. 10, 2014)(quoting *Richards v. United States,* 837

F.2d 965, 966 (11th Cir. 1988) and citing *LeCroy v. United States*, 739 F.3d 1297, 1321 (11th

Cir. 2014) and *Greene v. United States,* 880 F.2d 1299, 1301 (11th Cir. 1989))(internal

quotations and citations omitted).

## B.  GROUND ONE: GUILTY PLEA WAS NOT KNOWING AND VOLUNTARY

Dunn contends his "[c]onviction obtained by plea of guilty . . . was [made] unlawfully

or . . . involun[t]arily or with[out] the understanding of the nature of the charge or the

consequences of the plea." (Doc. 1 at 4.)  He states that he understood "that the ***guidelines***

of this charge [were] from . . . zero to ten years," that he had a "good chance of probation,"

and that he "may not have to register" as a sex offender.  (*Id.* [emphasis added].)  The court

finds that Dunn's conclusory contentions are not credible in light of the record before the

court.  Moreover, the court finds that Dunn's guilty plea was knowingly and voluntarily

made.  Therefore, his Motion to Vacate based on this Ground will be denied.[7]

The Supreme Court has held:

> A plea of guilty and the ensuing conviction comprehend all of the
> factual and legal elements necessary to sustain a binding, final judgment of
> guilt and a lawful sentence.  Accordingly, when the judgment of conviction
> upon a guilty plea has become final and the offender seeks to reopen the

---

[7]The court notes, "A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.  Thus, only an attack on the voluntary and knowing nature of the plea can be sustained.  Moreover, even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Lacey v. United States*, No. CIV.A. 13-00413-KD, 2015 WL 1778426, at *5 (S.D. Ala. Apr. 20, 2015)(internal quotations and citations omitted).  Nevertheless, because the Government has not raised this procedural bar to any of Dunn's claims, the court will address the claims on their merits.

> proceeding, the inquiry is ordinarily confined to whether the underlying plea
> was both counseled and voluntary.  If the answer is in the affirmative then the
> conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).  "A guilty plea involves the waiver of a

number of a defendant's constitutional rights, and must therefore be made knowingly and

voluntarily to satisfy the requirements of due process."  *United States v. Moriarty*, 429 F.3d

1012, 1019 (11th Cir. 2005)(citing *Brady v. United States,* 397 U.S. 742, 748 (1970);

*Galbraith v. United States,* 313 F.3d 1001, 1006 (7th Cir. 2002)).  Therefore, "[a] court

accepting a guilty plea must . . . specifically address three 'core principles,' ensuring that a

defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the

charges, and (3) understands the consequences of his plea."  *Id*. (citing *United States v.

Jones,* 143 F.3d 1417, 1418-19 (11th Cir. 1998)).  "If a defendant understands the charges

against him, understands the consequences of a guilty plea, and voluntarily chooses to plead

guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review."

*Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir.  1991)(internal quotations and citations

omitted).  "[A] defendant who seeks reversal of his conviction after a guilty plea . . . must

show a reasonable probability that, but for the error, he would not have entered the plea."

*Moriarty*, 429 F.3d at 1020 (quoting *United States v. Dominguez Benitez,* 542 U.S. 74, 83

(2004)).

> The inquiry into whether the plea is made intelligently does not mean that the
> court must determine whether the defendant is making a "smart" decision by
> pleading guilty.  Instead, "[i]n order for a guilty plea to be entered knowingly
> and intelligently, the defendant must have not only the mental competence to

> understand and appreciate the nature and consequences of his plea but he also
> must be reasonably informed of the nature of the charges against him, the
> factual basis underlying those charges, and the legal options and alternatives
> that are available."

*Stano*, 921 F.2d at 1142 (quoting *LoConte v. Dugger*, 847 F.2d 745, 753 (11th Cir. 1988)).

A plea is not involuntary due to a defendant's misunderstanding of the length of his sentence

when the district court tells the defendant the maximum penalty he is facing and that the

court will set the sentence.  *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001); *see*

*also United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990)("To the extent that Bradley

claimed his guilty plea was based on his attorney's estimate of the sentence and offense level,

the claim did not warrant withdrawal of the guilty plea where Bradley acknowledged to the

court that he understood the possible maximum sentence for his crime to be greater than the

sentence the court ultimately imposed."  (citing *United States v. Sweeney,* 878 F.2d 68, 70

(2d Cir. 1989))); *Wilborn v. United States*, No. 4:11-CR-0470-VEH, 2014 WL 3385307, at

*8-9 (N.D. Ala. July 10, 2014)("While significant misleading statements of counsel related

to the length of a potential sentence that prompt a defendant to plead guilty can amount to

ineffective assistance, where, as here, a court correctly advises a defendant at the plea

colloquy about his potential sentence, including its possible maximum and minimum, a

defendant generally cannot establish prejudice on an effective-assistance claim based on an

erroneous sentence prediction.")(internal quotations and citations omitted).

During the plea colloquy, the court inquired of Dunn whether his plea was knowing

and voluntary:

THE COURT:  . . .  So, Mr. Dunn, first, with regard to what the Assistant U.S. Attorney stated with regard to the plea agreement; that is, if you plead guilty to Count Two, they will recommend a sentence at the low end of the Guideline range, as well as dismiss Counts One and Three, and then added to that what your attorney said, that you are forever giving up any right to challenge the validity of the search warrant, do you understand those to be the pertinent terms of the plea agreement in your case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you have any different understanding of the plea agreement?

THE DEFENDANT:  No, ma'am.

THE COURT:  I want to go over some things in the plea agreement. The plea agreement references the Federal Sentencing Guidelines.  Have you and your attorney discussed the Sentencing Guidelines and how they are going to impact on a sentence resulting from a plea of guilty?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you understand there's no parole from any custodial sentence imposed under the Federal Sentencing Guidelines?

THE DEFENDANT:  Yes, ma'am.

. . .

THE COURT:  Mr. Tuten, are you satisfied your client has a sufficient understanding of the Guidelines to make his plea here today a knowing plea?

MR. TUTEN:  Yes, Your Honor. Mr. Dunn and I have spent a lot of time together discussing the issues of this case, in particular, the application of the Guidelines.  He obviously is very concerned about what the ultimate sentence is going to be.

THE COURT:  Is this a case with a mandatory minimum or not?

[AUSA] MS. HODGE:  No, Your Honor, on possession and access.

13

THE COURT:  I didn't [think] so.

MR. TUTEN:  One of the other counts would have been, but not Count Two.  But during the time that we spent together, Mr. Dunn had a lot of questions, a lot of good questions, that led me to believe that he understood the issues and was able to consider those and ponder those and understand how it would affect him and his future as far as a possible conviction.

I answered all of his questions.  And as far as I know, he has no other questions about that now.  So I do believe he has a full understanding of the issues about this case, about any possible defenses, about the Sentencing Guidelines and how this plea agreement is going to affect the future proceedings in this matter.

THE COURT:  Thank you very much.

(Crim. Doc. 22 at 6-9.)

 Dunn has not alleged that this testimony was false or why, if he thought he had been promised probation, he did not say so.[8]  He has not alleged reasonably specific facts to rebut Tuten's statement at the plea colloquy that he had reviewed the Sentencing Guidelines with Dunn and that Dunn knew the sentence he was facing by pleading guilty.

The court notes that Dunn had at least 35 days to review the PSR before sentencing. (Crim. Doc. 23 at 3.)  This report set forth the Advisory Guideline Imprisonment Range as 97 months to 120 months.  (*See id*. at 4.)  Despite having this information, Dunn never sought to withdraw his plea of guilty or otherwise tell the court of his now-alleged confusion or

---

[8]"There is a strong presumption that statements made during the plea colloquy are true.  Consequently, a defendant bears a heavy burden to show that his statements under oath were false." *Patel v. United States*, 252 Fed. Appx 970, 975 (11th Cir. 2007)(citing *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988))(internal citations omitted).

misunderstanding regarding the Plea Agreement and the low-range Guideline sentence at any time before filing the instant Motion. *Cruz v. United States*, 188 Fed. Appx. 908, 914 (11th Cir. 2006)("At the plea hearing, Cruz stated twice that she was fully satisfied with her representation from counsel. Cruz also stated that no one had made any promises or assurances to her, or coerced her into pleading guilty. The court also explained to her the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else. The court also informed her of her right to plead not guilty and continue to trial. Cruz never mentioned that her counsel had coerced her into pleading guilty or assured her that she would receive a lesser sentence. Furthermore, after Cruz received the Presentence Investigation Report and moved to have counsel substituted, she never openly complained about her counsel's ineffectiveness or attempted to withdraw her guilty plea.");[9] *see also United States v. Liedke*, 449 Fed. Appx. 44, 45-46 (2d Cir. 2011)(citing *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir.2005)); *United States v. Wright*, 135 Fed. Appx. 222, 224-26 (11th Cir. 2005). Even assuming he was not informed of the Sentencing Guideline range he was facing before sentencing, Dunn has failed to allege that he would not have pled guilty and would have gone to trial if he had been informed of the Sentencing Guideline range when he pled guilty.

---

[9]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

The court finds that Dunn has not shown that he is entitled to relief based on his alleged unlawful guilty plea. Therefore, his Motion to Vacate will be denied as to this ground.

## C. GROUND TWO: DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Pursuant to *Strickland*, "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)(citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent

16

assistance." *Id*. at 690.   "An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each." *Stano,* 921 F.2d at 1151.

> . . . [C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.   To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client.   The interest underlying [a defendant's] claim is his interest in having, before he judges the desirability of the plea bargain, a general knowledge of the possible legal consequences of facing trial.

*Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir. 1984)(internal citations omitted).

In the context of a collateral challenge to a guilty plea, "The second, or 'prejudice,' requirement [of *Strickland*] focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.   In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The court finds it unnecessary to address whether counsel's performance was outside "the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, because Dunn has not alleged any prejudice arising from counsel's alleged deficient performance. Like the petitioner in *Hill*, Dunn has not alleged that he would have proceeded to trial if not

for counsel's alleged errors or that there are "special circumstances that might support the conclusion that he placed particular emphasis on" counsel's representation that he would receive probation. *Hill*, 474 U.S. at 60. He alleges:

> Was told I would get low end of the guidelines, [which] I understood as . . . being zero to ten years not a guideline set by a investigator. Also, my attorney, Robert Tuten, did not want to appeal the search warrant on the grounds of several clerical errors including the address.[10] He did not want to research about who all resided at residence at time of investigation.[11]

(Doc.1 at 4 [footnotes added].)

Because Dunn has not alleged that but for counsel's errors he would have proceeded to trial, the court finds Dunn cannot show the prejudice required to prove a claim of ineffective assistance of counsel. Therefore, the Motion to Vacate based on ineffective assistance of counsel will be denied.

## D. GROUND THREE:  DENIAL OF RIGHT TO APPEAL

Dunn contends that he was denied the right to appeal. (Doc. 1 at 4.) As supporting facts, he contends:

> [I w]as told by Judge Sharon Blackburn that I had 14 days to appeal the length of the sentence. As soon as sentencing hearing was over, I talked to Robert

---

[10]Tuten filed a Motion to Suppress, which was later withdrawn as part of the Plea Agreement. (*See* Crim. Docs. 10, 22 at 6-7.)

[11]The court finds that whether or not someone other than Dunn placed the images of child pornography on Dunn's computer while living with Dunn is irrelevant to the possession charge. Dunn admitted in open court that he had viewed the images and downloaded some of them to a CD that he kept. Under these facts, the initial source of the images would not be a defense to the possession charge.

Tuten about appeal.  I did not hear from him again until after the 14 day period was up.  [I n]ever was told how and what to do about filing a appeal.

(*Id*.)  Dunn did not allege that he directed Tuten to file an appeal and/or that he did not waive his right to appeal his sentence under the terms of the Plea Agreement.  Dunn makes no mention of his appeal waiver or the fact that he could appeal only if the sentence violated the law.[12]  During the plea colloquy, the court reviewed the appeal waiver in the Plea Agreement with Dunn:

> THE COURT:  . . .  I do want to ask you also about the section of the plea agreement that's entitled "Waiver of Right to Appeal and Post-Conviction Relief."  In this section of the plea agreement, you're giving up some important rights.
>
> The main thing that you're giving up is the right to appeal your conviction and sentence and file a petition for habeas corpus unless I impose a sentence that is in excess of the applicable statutory Guideline sentence or if it's above the statutory maximum provided by statute.
>
> . . .
>
> THE COURT:  Mr. Dunn, do you understand the rights that you're giving up in this section of the plea agreement about waiving your right to appeal your conviction and sentence and to file a habeas corpus petition?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  Have you discussed those rights with your attorney?

---

[12]In the Plea Agreement, Dunn waived his right to appeal his conviction and sentence except if the court imposed a sentence in excess of the statutory maximum sentence – ten years – or in excess of the guideline sentencing range – also ten years.  (*See* doc. 12 at 5-6.) Neither of these two conditions occurred as Dunn was sentenced to the low end of the guidelines range, 97 months, which was below the statutory maximum sentence.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And, Mr. Tuten, are you satisfied he understands the rights he's giving up in this section of the plea agreement?

MR. TUTEN:  Yes, Your Honor.

(Crim. Doc. 22 at 8-9.)  Dunn has not alleged that his testimony regarding his knowledge of the appeal waiver was false.  *Patel*, 252 Fed. Appx at 975 ("a defendant bears a heavy burden to show that his statements under oath were false").

Contrary to Dunn's assertion, the court did not tell Dunn that he could appeal the length of his sentence within 14 days, (*see* doc. 1 at 4); rather, the court told Dunn, "Although there is a waiver of right to appeal and that waiver is probably valid, nevertheless, I always tell a defendant at sentencing that you have the right to appeal the sentence imposed within 14 days ***if you believe the sentence is in violation of law***."  (Crim. Doc. 23 at 18-19 [emphasis added].)  Dunn has alleged no facts to support a finding that the appeal waiver is invalid.  Moreover, he has not alleged specific facts to demonstrate either that he directed Tuten to file a notice of appeal or that Tuten failed to consult with him about an appeal.  (*See* doc. 1 at 4 ["As soon as sentencing hearing was over, I talked to Robert Tuten about appeal. I did not hear from him again until after the 14 day period was up."].)

In this Circuit –

The *Strickland* test also applies to claims of ineffective assistance based on counsel's failure to file an appeal.  *Roe v. Flores–Ortega,* 528 U.S. 470, 476-77, 120 S. Ct. 1029, 1034, 145 L. Ed. 2d 985 (2000).  When counsel disregards specific instructions from a convicted defendant to file a notice of appeal,

20

counsel acts in a manner that is professionally unreasonable. *Id.* at 477, 120 S. Ct. at 1035. In the absence of specific instructions, an attorney nonetheless has a constitutional duty to consult with his client about an appeal, when (1) a rational convicted defendant would want to appeal, or (2) the convicted defendant reasonably demonstrated to counsel an interest in appealing. *Id.* at 480, 120 S. Ct. at 1036.

In the "vast majority of cases," the Supreme Court expects courts will find "that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481, 120 S. Ct. at 1037. Factors we consider in determining whether a rational defendant would want to appeal include whether the conviction follows a guilty plea, whether the defendant received the sentence bargained for as part of a plea agreement, whether the plea agreement waived appellate rights, and whether there are nonfrivolous grounds for appeal. *Id.* at 480, 120 S. Ct. at 1036; *Otero v. United States,* 499 F.3d 1267, 1270 (11th Cir. 2007). A guilty plea both "reduces the scope of potentially appealable issues" and indicates "the defendant seeks an end to judicial proceedings." *Flores–Ortega,* 528 U.S. at 480, 120 S. Ct. at 1036.

*Fields v. United States*, 577 Fed. Appx. 916, 919 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1878 (2015).

Dunn does not allege that he directed Tuten to file an appeal. Moreover, his conviction followed a guilty plea, he received the sentence called for by the Plea Agreement, and he waived his right to appeal any sentence below the statutory maximum that was within the Guidelines range. During the plea colloquy, Dunn admitted that he had possessed numerous images of child pornography and that he had downloaded some of those images from his computer onto a CD. Under these circumstances, the court finds Tuten had no duty to consult with Dunn following sentencing. *See id*. at 920. Moreover, even if the court were to find such a duty existed, the court finds that Dunn has not alleged "there is a reasonable

probability that, but for [Tuten's] deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 484).

Based on the foregoing, the court finds Dunn's Motion to Vacate is due to be denied as to his claim that he was denied the right to appeal.

## CONCLUSION

Based on the foregoing, petitioner Michael Robert Dunn's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (Doc. 1), is due to be denied. An order denying petitioner's Motion will be entered contemporaneously with this Memorandum Opinion.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Proceedings, provides "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)." Fed. R. App. P. 22(b)(1). And, the "certificate of appealability may issue . . . *only* if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2)(emphasis added). To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner

22

or that the issues presented were adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)(citations and internal quotations omitted).

Petitioner's Motion to Vacate, (Doc. 1), does not demonstrate that he was denied any constitutional right or that the issues he raises are reasonably debatable and/or deserve encouragement to proceed further. Therefore, issuance of a certificate of appealability is not warranted in this case.

**DONE** this 12th day of January, 2016.

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE